Erin Rose Ronstadt, SBN 028362
Kevin Koelbel, SBN 016599
OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745
(602) 761-4443 Fax
erin@oberpekas.com
kevin@oberpekas.com

Attorneys for Plaintiff,
Carolyn Larsen

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| CAROLYN LARSEN,<br><br>    Plaintiff,<br><br>v.<br><br>SALT RIVER PROJECT HEALTH AND LIFE PLAN,<br><br>    Defendant. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; PREJUDGMENT AND POSTJUDGMENT INTEREST; PENALTIES; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff, CAROLYN LARSEN, herein sets forth the allegations of her Complaint against Defendant SALT RIVER PROJECT HEALTH AND LIFE PLAN.

**PRELIMINARY ALLEGATIONS**

1. "Jurisdiction" - This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is

predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of obtaining benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan. Plaintiff seeks relief, including but not limited to: payment of benefits, prejudgment and post judgment interest, and attorneys' fees and costs.

2. Plaintiff, CAROLYN LARSEN, at all times relevant was a resident of Mesa in Maricopa County, Arizona. Therefore, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2).

3. Plaintiff is informed and believes that Defendant SALT RIVER PROJECT HEALTH AND LIFE PLAN (the "Plan") is an employee benefit plan regulated by ERISA and sponsored by Salt River Project Agricultural Improvement and Power District with its principal place of business in Arizona.

4. Plaintiff was at all relevant times a covered participant under the Plan and pursuant to which Plaintiff and her daughter, Jessica, were entitled to health benefits.

5. Plaintiff is informed and believes that Defendant is authorized to transact and is transacting business in this judicial district, the District of Arizona, and can be found in the District of Arizona.

## FIRST CAUSE OF ACTION
## FOR DENIAL OF PLAN BENEFITS UNDER ERISA

6. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

7. Plaintiff's daughter, Jessica, was at all relevant times a covered beneficiary under the Plan.

8. Plaintiff is informed and believes that ComPsych made benefit coverage determinations for mental health services for the Plan.

9. The Plan provides coverage for medically necessary behavioral health services.

10. The Plan provides the following definition of "Medically necessary":

A service or supply will be determined to be medically necessary by the Plan Administrator or its designee if it:

    1. Is provided by or under the direction of a physician or other duly licensed health care practitioner who is authorized to provide or prescribe it or a dentist if a dental service or supply is involved;

    2. Is determined by the Plan Administrator or its designee to be necessary in terms of generally accepted American medical standards; and

    3. Is determined by the Plan Administrator or its designee to meet all of the following requirements:

- It is consistent with the symptoms or diagnosis and treatment of the illness or injury;
- It is not provided solely for the convenience of the patient, physician, hospital, health care practitioner or health care facility;
- It is an appropriate service or supply given the patient's circumstances and condition;
- It is a cost-efficient supply or level of service that can be safely provided to the patient; and
- It is safe and effective for the illness or injury for which it is used.

(Plan, p.154).

11. This action arises from Defendant's denial of health claims for Jessica's treatment of mental illnesses.

## Jessica's Health History

12. In 1998, Jessica was born in Russia to a young mother who was intoxicated during delivery. As a result, Jessica suffered the effects of fetal alcohol syndrome.

13. Jessica's mother gave up Jessica for adoption at birth. Jessica was placed in an orphanage in Russia.

14. Plaintiff and her husband adopted Jessica in Russia when she was 11 months old.

15. As a young child, Jessica displayed effects of fetal alcohol syndrome, including prolonged tantrums and hyperactivity.

16. When Jessica was 10 years old, she fell from a second story window. She suffered a spinal cord injury that left her paraplegic. Since then, Jessica has required a wheelchair at all times.

17. As a teenager, Jessica engaged in unsafe behaviors. Jessica's behaviors included shoplifting, running away from home, self-harming, unsafe relationships with strangers met on the internet, and suicidal thoughts and plans.

18. At 15 years old, Jessica was diagnosed with bipolar disorder I and prescribed lithium. In June 2014, six months after her diagnosis, she was admitted to an inpatient psychiatric hospital for one week.

19. Jessica obtained intensive outpatient treatment (approximately 3 hours per day, 3 days per week) but it did not curb her suicidal ideation and unsafe behaviors.

20. At ages 16 and 17, Jessica ran away from home multiple times during the time period March to July 2015. Each time, Jessica returned home and threatened suicide with specific plans, such as wheeling herself onto a busy road. Each time, Jessica was then admitted to inpatient psychiatric hospital for up to a week.

21. Jessica was additionally diagnosed with adjustment disorder with mixed disturbance of emotions and conduct, disruptive mood dysregulation

disorder, identity problem, and depressive disorder with unspecified anxiety.

22. As Jessica's mental state continued to worsen, her erratic, reckless, and impulsive behavior continued to escalate. Jessica attempted suicide four times. Her parents sought inpatient psychiatric treatment for Jessica's safety.

23. On July 7, 2015, Jessica was admitted to ViewPoint Center, a psychiatric treatment facility for adolescents.

24. On August 8, 2015, Jessica was discharged from ViewPoint Center. Her treating neuropsychologist recommended Jessica receive residential treatment because her mental health was not stable.

### Jessica's Residential Treatment at Spring Ridge Academy

25. On August 9, 2015, Jessica, then age 17, was admitted to Spring Ridge Academy ("SRA") a residential treatment facility licensed as a behavioral health care provider by the State of Arizona.

26. Plaintiff promptly submitted claims to ComPsych for Jessica's residential treatment.

27. On December 11, 2015, ComPsych denied the claim based on an erroneous claim that SRA was not a residential treatment facility.

28. SRA has been licensed as a residential behavioral health facility by the Arizona Department of Health Services since December 10, 1999.

29. On January 15, 2016, Jessica's treating clinician wrote a progress report stating that Jessica was suicidal. The clinician wrote:

> If Jessica were to leave Spring Ridge Academy today, she would be ripped from the connections she has forged with peers and staff further adding to her feelings of abandonment which are currently being addressed. She would be leaving in the midst of EMDR treatment which would result in significant mood instability. Jessica would be [sic] pose a risk to her own safety. Her intense feelings drive her to "need to get away" and would plunge her into episodes of running away from home and difficult situations.

30. On January 19, 2016, Mental Health & Autism Insurance Project submitted an appeal on Jessica's behalf and requested approval of benefits for Jessica's residential treatment at SRA from August 9, 2015 forward.

31. In a January 25, 2016 letter, ComPsych denied the appeal, claiming that "treatment requested does not meet criteria for medical necessity."

32. On February 29, 2016, Mental Health & Autism Insurance Project submitted a second level appeal on Jessica's behalf.

33. On March 10, 2016, the Plan issued a final adverse benefit determination denying Jessica's treatment at SRA from August 9, 2015 forward. However, the Plan erroneously identified Jessica's level of care as partial hospitalization treatment, not residential treatment. The Plan's denial letter stated that SRA did not meet the requirements for partial hospitalization.

34. Jessica remained in residential treatment at SRA until May 15, 2016 when she left treatment against medical advice.

35. Plaintiff incurred the cost of Jessica's treatment.

36. On July 21, 2016, Plaintiff's attorney submitted a second level appeal for residential treatment to ComPsych in response to ComPsych's January 26, 2015 denial letter. Plaintiff's attorney also requested a copy of the clinical criteria used by ComPsych in issuing its denial.

37. On August 10, 2016, a ComPsych representative telephoned Plaintiff's attorney and advised that the July 21, 2016 appeal would be treated as a first level appeal for Jessica's residential treatment due to the Plan's mistake in listing the wrong level of care in the denial letter.

38. In a letter dated September 22, 2016[1], ComPsych denied benefits for Jessica's residential treatment, claiming that Jessica's treatment lacked medical necessity and did not meet "InterQual residential criteria."

---

[1] The letter was not mailed until October 24, 2016 according to the USPS postmark.

39. On April 27, 2017, Plaintiff's attorney submitted a second level appeal for Jessica's residential treatment, and request for clinical criteria used in the appeal determination, to ComPsych and the Plan.

40. On August 2, 2017, the Plan submitted Plaintiff's second level appeal to an independent review company for external review. The external review concluded that Jessica's residential treatment at SRA was not medically necessary.

41. The external review did not address any of the concerns raised by Plaintiff's attorney in the appeal. Specifically, the external review did not address Plaintiff's risk of harm in her propensity to run away, self-harm, engage in risky behaviors, and suicidal threats. The external review also did not appropriately weigh Plaintiff's multiple mental health diagnoses and physical condition of paraplegia. The external review did not state what, if any, criteria was applied in the decision to further deny benefits.

42. On or about August 31, 2017, the Plan issued a letter adopting the medical review and denied the appeal. The Plan did not state what, if any, criteria was applied in the decision to further deny benefits.

43. The Plan wrongfully denied Plaintiff's request for benefits in the following respects, among others:

    (a) Failure to authorize and pay for mental health services rendered to Jessica at a time when the Plan knew Jessica was entitled to such benefits under the terms of the Plan;

    (b) Failure to provide prompt and specific explanations for the denial of Plaintiff's claims for mental health benefits;

    (c) Failure to provide reference to the specific Plan provisions on which the denial of Plaintiff's claims was based;

    (d) After Plaintiff's claims were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to perfect her claim along with an explanation of why such material is or was necessary;

  (e) Failure to properly and adequately investigate the merits of Plaintiff's mental health claims and/or provide alternative and medically appropriate courses of treatment;

  (f) Failure to timely notify Plaintiff of her appeal denial within the time prescribed by the Plan and ERISA;

  (g) Failure to provide Plaintiff with a full and fair review pursuant to 29 C.F.R.§ 2560.501-1 (h)(3)(iii) by failing to consult with health care professionals who have appropriate training and experience in the field of medicine involved in the medical judgment; and

  (h) Failure to thoroughly and independently evaluate both Jessica and her medical records prior to issuing denials of Plaintiff's claim and appeal.

  44. Plaintiff is informed and believes and thereon alleges that Defendant wrongfully denied Plaintiff's claims for medical benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this future litigation and which Plaintiff will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

  45. Following the denial of the claims for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on her part to be performed.

  46. As a proximate result of the denial of medical benefits due Plaintiff, Plaintiff has been damaged in the amount of all of the medical bills incurred for Jessica's treatment, in a total sum to be proven at the time of trial.

  47. As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

  48. Due to the wrongful conduct of Defendant, Plaintiff is entitled to enforce her rights under the terms of the Plan and to clarify her rights to future

benefits under the terms of the Plan.

**REQUEST FOR RELIEF**

49. As a direct and proximate result of the failure of the Defendant to pay claims for medical benefits, and the resulting injuries and damages sustained by Plaintiff as alleged herein, Plaintiff is entitled to and hereby requests that this Court grant Plaintiff judgment against Defendant as follows:

    (a)    Payment of health care benefits due to Plaintiff under the Plan;

    (b)    Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

    (c)    Payment of prejudgment and post judgment interest as allowed for under ERISA; and

    (d)    For such other and further relief as the Court deems just and proper.

DATED: April 18, 2018                      OBER PEKAS RONSTADT

                                        BY:   *s/ Erin Rose Ronstadt*
                                                    Erin Rose Ronstadt
                                                    Kevin Koelbel
                                                    Attorneys for Plaintiff